UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CITY OF SIOUX FALLS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>AZZURO, INC.; SHORT-ELLIOTT-<br>HENDRICKSON, INC.,<br><br>　　　　　Defendants,<br><br><br>SHORT-ELLIOTT-HENDRICKSON, INC.,<br><br>　　　　　Third-Party Plaintiff,<br><br>vs.<br><br>UNISON SOLUTIONS, INC.,<br><br>　　　　　Third-Party Defendant,<br><br><br>AZZURO, INC.,<br><br>　　　　　Counterclaimant,<br><br>vs.<br><br>CITY OF SIOUX FALLS,<br><br>　　　　　Counterclaim Defendant. | 4:22-CV-04052-ECS<br><br><br><br>OPINION AND ORDER DENYING<br>DEFENDANT AZZURO, INC.'S MOTION<br>FOR PARTIAL SUMMARY JUDGMENT<br>ON COUNTS VI AND VIII OF PLAINTIFF<br>CITY OF SIOUX FALLS' COMPLAINT |

In 2015, the City of Sioux Falls (the "City") "commissioned the Sioux Falls Water Reclamation Facility Digester Gas Conditioning System Project (the 'Project') to add a new digester gas conditioning system to its water reclamation facility that would remove high concentrations of hydrogen sulfide to concentrations below 100 parts per million volume

(ppmv), and that would remove siloxane to concentrations below 100 parts per billion by volume (ppbv), which would then enable the City to operate its GE Jenbacher gas engine generator to create electricity for the benefit of the City." Doc. 1 ¶ 7. For reasons which are disputed by the various parties in this matter, the Project, particularly the Azzuro system meant to remove hydrogen sulfide, was unsuccessful. See generally id.

The City brought this litigation seeking damages against some parties involved with the Project. Id. Now before the Court is Defendant Azzuro, Inc.'s Motion for Partial Summary Judgment on Counts VI and VIII of the City's Complaint, Doc. 100.

## I.    Facts[1]

In 2015, the City hired Short-Elliot-Hendrickson, Inc. ("SEH") to provide services as the City's Professional engineering representative for the Project and to provide professional engineering services and advice to the City regarding bid design and specifications for the Project. Doc. 51 ¶ 3. On or about May 2015, SEH and Kennedy Jenks contacted Azzuro concerning a biogas system ("System") for the removal of hydrogen sulfide at the City's water reclamation plant. Id. ¶ 4; see Doc. 53 ¶ 5; Doc. 56 ¶ 4. Azzuro did not contact or otherwise solicit the City in connection with the Project. Doc. 51 ¶ 5; see Doc. 56 ¶ 5; see Doc. 60-1 at 11–16 (Azzuro communicating with SEH on a related matter in 2013). Azzuro made representations to the City and SEH that Azzuro designed, engineered and supplied engineered biogas desulfurization systems, and that it had done so before. Doc. 57 ¶ 2.

SEH prepared the engineered bid designs and specifications for the Project. Doc. 51 ¶ 6 (quoting Doc. 1 ¶ 9). SEH then requested that Azzuro provide a proposal for the Project. Id. ¶ 7. As requested, Azzuro, by document dated June 22, 2015, updated by documents dated September

---

[1] For readability, quotation marks and most internal citations are omitted when quoting facts from the statement of undisputed material facts or its response.

16, 2015, and December 22, 2015, presented an Offer Package for a Gas Conditioning Facility to SEH ("Offer Package"). Id. ¶ 8. The updates to the Offer Package were required due to changes made by SEH to its engineering specifications. Id. ¶ 9. Under Section 1.01 of the specifications, Azzuro was to design, manufacture and deliver the System, including the equipment listed therein. Id. ¶ 11. The System was to be installed by the installation contractor retained by the City. Id. ¶ 13. SEH thereafter requested that Azzuro submit its bid to supply the System for the Project to Unison Solutions, Inc. Id. ¶ 15. By document dated April 6, 2016, Azzuro submitted to Unison its updated Bid Package for its System for the Project ("Bid Package"). Id. ¶ 17. Azzuro's Bid Package included a performance guarantee and a confirmation that Azzuro was in full compliance with the City's Bid Specification. Doc. 57 ¶¶ 11, 15. On April 7, 2016, Unison submitted its proposal to the City, attaching and incorporating the Bid Package. Doc. 51 ¶ 19.

On April 14, 2016, the City Water Reclamation Unit issued a Bid Award Recommendation recommending the award of the supply contract to Unison. Id. ¶ 23. SEH reviewed the Unison proposal and Azzuro's Bid Package for the System and recommended that the City accept the Unison proposal, including Azzuro's bid. Id. ¶ 24. Thereafter, the City entered into a contract with Unison to supply equipment including the System. Id. ¶ 25. The City claims to have relied on SEH's recommendation and Azzuro's representations about its biogas desulfurization equipment expertise and experience. Doc. 57 ¶ 22. Specifically, the City claims it relied on Azzuro's representation that its engineered system would be a "standard" Azzuro system that would reduce the hydrogen sulfide level in the City's biogas to < 100ppm in accordance with the Bid Specifications in selecting the Azzuro system for its Project and in accepting Unison's bid incorporating Azzuro's Bid Package. Id. Both parties agree SEH

reviewed Azzuro's design, fully incorporated the Azzuro System into its engineered Project design, and stamped Project drawing for the City. Doc. 51 ¶ 26.

In the Spring of 2017, Azzuro, as a sub-supplier to Unison, delivered the System components to the City for installation by the installation contractor. Id. ¶ 28. Thereafter, the installation contractor AB Contractor, under the supervision of the City's site supervisor HR Green, began the installation of the System and additional equipment. Id. ¶ 29. In May 2017, after installation of the System had been completed, Azzuro began the work of start-up and bringing the System to operational level. Id. ¶ 30. Despite various fixes and multiple attempts, the System was unable to reach performance level. Id. ¶¶ 31–40.

## II.    Discussion

The instant motion attacks two of the City's claims against Azzuro: Count VI asserting negligent misrepresentation and Count VIII (referred to as Count IIX in the City's Complaint) asserting fraud/deceit. Doc. 100; see Doc. 1 ¶¶ 80–93, 102–111. Azzuro argues both counts fail as a matter of law because the City did not rely on statements made by Azzuro—it "relied upon its own expert's representations in the selection of the Azzuro System." Doc. 101 at 7; see generally id. The City resists the motion. Doc. 115.

### A.    Summary Judgment Standard

"Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Allan v. Minn. Dep't of Hum. Servs., 127 F.4th 717, 720 (8th Cir. 2025) (quoting Avenoso v. Reliance Standard Life Ins., 19 F.4th 1020, 1024 (8th Cir. 2021)). "A party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation modified). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp., 477 U.S. at 324). At the summary judgment stage, the Court must view evidence "in the light most favorable" to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

### B.    Azzuro's Argument

South Dakota substantive law governs in this diversity suit. Gasperini v. Ctr. for Humans., Inc., 518 U.S. 415, 427 (1996).

In South Dakota:

> [N]egligent misrepresentation occurs whenever one party makes (1) a misrepresentation, (2) without reasonable grounds for believing the statement to be true, (3) with the intent to induce a particular action by another party, and the other party (4) changes position with actual and justifiable reliance on the statement, and (5) suffers damage as a result.

Fisher v. Kahler, 641 N.W.2d 122, 126–27 (S.D. 2002).

In South Dakota, the elements of fraud/deceit are:

> A representation made as a statement of fact, which is untrue and intentionally or recklessly made

1.    With intent to deceive for the purpose of inducing the other party to act upon it;

2.    Reliance upon the untrue statement of fact;

3.    Resulting in injury or damage.

N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc., 751 N.W.2d 710, 714 (S.D. 2008) (citation omitted).

For both counts, the City claims Azzuro "made numerous misrepresentations about the Azzuro System and its performance capabilities to the City." Doc. 1 ¶¶ 85, 103. It claims Azzuro "made false statements to the City that the Azzuro biological emission control system technology was proven to be highly effective in removing toxic emissions, including high hydrogen sulfide emission reduction." Id. ¶¶ 86, 104. It claims Azzuro "made false statements to the City that the Azzuro biological emission control system technology had exceptional reliability and microbial robustness, with simple installation and low maintenance expense." Id. ¶¶ 87, 105. It claims Azzuro "made false statements to the City that the Azzuro System fully complied with the contract performance requirements." Id. ¶¶ 88, 106. And it claims Azzuro "made false statements to the City that the Azzuro System was a proven technology that could reduce the hydrogen sulfide effluent below 100 ppmv and siloxane effluent below 100 ppbv." Id. ¶¶ 89, 107.

Necessary to prove for both negligent misrepresentation and fraud is the element of reliance. The City pleads its detrimental reliance on Azzuro's alleged misrepresentations. Id. ¶¶ 91, 109. Azzuro argues that the City did not rely on statements made by Azzuro to select the Azzuro system because Azzuro worked and went through SEH, not the City. Doc. 101 at 5–7. It argues "the City retained SEH to provide advice in the selection of a gas digester system for the

6

Project." Id. at 6.  It argues, "SEH reviewed the Azzuro design and requested that Azzuro submit its [p]roposal to Unison, and SEH recommended the Azzuro System to the City." Id.  It argues, "[t]he City followed SEH's advice and selected the Azzuro System." Id. at 6–7.  In sum, "[t]he City relied upon its own expert's representations in the selection of the Azzuro System." Id. at 7.

Azzuro cites to only one case, Lack Industries, Inc. v. Ralston Purina Co., to support this theory—that a "plaintiff cannot sustain a claim for fraud or negligent misrepresentation if the plaintiff relied upon the knowledge of its own employees and retained advisors to detect the information encompassing the fraud." Id. at 5 (citing 327 F.2d 266, 279 (8th Cir. 1964)).  In Lack, the Eighth Circuit, construing Minnesota law, held that a poultry producer was not justified in relying on optimistic sample financial statements provided by its feed supplier to make its business decisions, when the producer's own accountant conveyed those statements' unreliability both to the producer and the bank offering financing.  327 F.2d at 268–76.  The court also held unjustifiable any reliance on the sample statements when the producer held steady on a ruinous course despite early operating losses. Id. at 276.  The court held "no valid projection of Lack's future profit picture might still be justifiably relied upon by appellants based upon a pro forma profit statement" when it could instead consider its own results. Id. (citation modified).

Restated, the takeaways of Lack are (1) there is no justifiable reliance on another's statement if a plaintiff ignores a qualified employee's warning against relying on that statement, and (2) there is no justifiable reliance when a plaintiff continues to assume an expected outcome stated by another despite the plaintiff's contradictory first-hand experience.  Here, there are no facts in the record that anyone warned the City against purchasing an Azzuro System.  Nor are there facts suggesting the City ignored any contradictory first-hand experience. Lack, therefore, is unhelpful.

The issue here is a narrow one: whether, as matter of law, the City could not have relied on Azzuro. Azzuro premises its position on the fact that SEH was hired to make the ultimate recommendation. Doc. 101 at 5–7. But the City argues it still relied on "Azzuro's representations about its biogas desulfurization equipment expertise and experience." Doc. 115 at 18. It argues it relied on Azzuro's statement that the "system would be Azzuro's 'standard' biogas desulfurization system," and that Azzuro should not get "a free pass" based solely on the fact that the City hired an engineer on the project. Id. at 18, 22.

"Reliance in a fraudulent inducement case is a question of fact." Oxton v. Rudland, 897 N.W.2d 356, 361 (S.D. 2017) (citation modified). "To recover for negligent misrepresentation, it must be alleged and *shown* that the person acted or relied upon such misrepresentations." Worden v. Farmers State Co., 349 N.W.2d 37, 41 (S.D. 1984) (emphasis added). These "[q]uestions of fact on material issues such as fraud are not appropriate for summary judgment," Oxton, 897 N.W.2d at 361, and Azurro does not cite to any case that suggests that the City cannot have relied on Azzuro simply because it used an intermediary. General tort principles contradict that proposition.

Restatement (Second) of Torts § 552(2)(a) states that liability for negligent misrepresentation "is limited to loss suffered by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it." The South Dakota Supreme Court has cited § 552 as being "in essential agreement with South Dakota law." Fisher, 641 N.W.2d at 126. And that court revisits § 552 as needed for guidance on novel issues. Steineke v. Delzer, 807 N.W.2d 629, 632 (S.D. 2011) ("The Restatement (Second) of Torts § 552B approach to damages is consonant with our prior reliance on § 552 in considering negligent misrepresentation jurisprudence."). This Court is

8

comfortable presuming that South Dakota, like § 552(2)(a), extends the availability of negligent misrepresentation claims to persons "whose use the representation was intended." Vogel v. Foth & Van Dyke Assocs., 266 F.3d 838, 841 (8th Cir. 2001) (construing Iowa law and quoting Prosser and Keaton on the Law of Torts § 107, at 747 (1984)); cf. Johnson v. Hayman & Assocs., 867 N.W.2d 698, 699–706 & n.3 (S.D. 2015) (identifying a third party's reliance on an abstractor's professional report as helpful to analyze foreseeability in the professional negligence context).

The Court's presumption is fortified by South Dakota's similar approach to fraud. In Taggart v. Ford Motor Credit Co., the South Dakota Supreme Court relied on comment d to Restatement (Second) of Torts § 533 for the proposition that "a person who makes a representation through a third party . . . with the intent that it be repeated to a third party for the purpose of influencing conduct [or a person who has] information that gives him special reason to expect that [his statement] will be communicated to others, and will influence their conduct," may be liable for fraudulent misrepresentation. 462 N.W.2d 493, 503 (S.D. 1990) (internal quotation marks omitted).

The upshot is that neither claim's viability is defeated by the existence of a middleman. Viewing the facts here in the light most favorable to the City, it is possible for a jury to find that the City was among the limited group of persons for whose benefit and guidance Azzuro intended to supply information, or that Azzuro knew the City's engineer would supply Azzuro's representations to the City. Restatement (Second) of Torts § 552(2)(a). It is also possible for a jury to find that Azzuro intended its representations to be repeated to the City for the purpose of garnering its business. Taggart, 462 N.W.2d at 503. Finally, it is possible for a jury to find that the City relied on those statements in deciding whether to adopt SEH's ultimate

recommendation.  These are genuine issues of material fact that must be resolved by the fact finder and not this Court.  As a result, Azzuro's Motion for Partial Summary Judgment is denied.

## III.    Order

For the above reasons, and the record as it now exists before the Court, it is hereby

ORDERED that Defendant Azzuro, Inc.'s Motion for Partial Summary Judgment on Counts VI and VIII of Plaintiff City of Sioux Falls' Complaint is denied.

DATED this 25th day of March, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE