UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CITY OF SIOUX FALLS,<br><br>              Plaintiff,<br><br>vs.<br><br>AZZURO, INC.; SHORT-ELLIOTT-HENDRICKSON, INC.,<br><br>              Defendants,<br><br><br>SHORT-ELLIOTT-HENDRICKSON, INC.,<br><br>              Third-Party Plaintiff,<br><br>vs.<br><br>UNISON SOLUTIONS, INC.,<br><br>              Third-Party Defendant,<br><br><br>AZZURO, INC.,<br><br>              Counterclaimant,<br><br>vs.<br><br>CITY OF SIOUX FALLS,<br><br>              Counterclaim Defendant. | 4:22-CV-04052-ECS<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART UNISON SOLUTIONS, INC'S MOTION FOR SUMMARY JUDGMENT AND DENYING SHORT ELLIOT HENDRICKSON, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO SEH'S CLAIMS AGAINST UNISON SOLUTIONS |

In 2015, the City of Sioux Falls (the "City") "commissioned the Sioux Falls Water Reclamation Facility Digester Gas Conditioning System Project (the 'Project') to add a new digester gas conditioning system to its water reclamation facility that would remove high

concentrations of hydrogen sulfide to concentrations below 100 parts per million volume (ppmv), and that would remove siloxane to concentrations below 100 parts per billion by volume (ppbv), which would then enable the City to operate its GE Jenbacher gas engine generator to create electricity for the benefit of the City." Doc. 1 ¶ 7. For reasons which are disputed by the various parties in this matter, the Project, particularly the Azzuro system meant to remove hydrogen sulfide, was unsuccessful. See generally id.

The City brought this litigation seeking damages against some parties involved with the Project. Id. One of those parties, the City's engineer, Short Elliott Hendrickson, Inc. (SEH), filed a third-party complaint against Unison Solutions, Inc., for indemnification/contribution and tort and breach of contract/warranty damages. Doc. 8. On the same date, the City signed a release of Unison for consideration. Doc. 14-1.

Before the Court are Unison and SEH's cross motions for summary judgment. Docs. 93, 102.

## I.    Facts[1]

SEH is an engineering and architectural corporation with its principal place of business in St. Paul, Minnesota. Doc. 95 ¶ 4. The City contracted with SEH for SEH to provide services as the City's professional engineering representative for the Project and to give professional engineering consultation and advice to the City regarding the Project. Doc. 107 ¶ 2. The Project was to remove hydrogen sulfide from the gas emitted by the City's treatment plant so the gas could be used to produce electricity. Id. ¶ 3. With hydrogen sulfide in the gas, the repair and maintenance costs for the generators were alleged by the City to be more expensive. Id.

---

[1] For readability, quotation marks and most internal citations are omitted when quoting facts from the statements of undisputed material facts or their responses.

¶ 4. The Project was to replace the City's over 25-year-old gas conditioning system with a system that could provide treatment to decrease operation and maintenance costs. Id. ¶ 5.

SEH proposed using chemical treatment, but the City was concerned about using ferric chloride and other similar chemicals and was interested in exploring biological processes. Id. ¶ 6. SEH communicated to the City about chemical treatments as a common and accepted use in wastewater treatment and advised the City to move forward with a chemical system. Id. ¶ 7.

As early as 2013, SEH and Bonno Koers of Azzuro, Inc. began discussions regarding the Project. Doc. 95 ¶ 11; see Docs. 96-3, 96-4. At the time of these discussions, Dominique Alibeckoff was employed by Azzuro and involved in the discussions on behalf of Azzuro. Doc. 95 ¶ 12. Alibeckoff was one of four Azzuro employees on the communications. Id. ¶ 48. Dustin Maas was involved in the discussions on behalf of SEH. Id. ¶ 13; Doc. 96-4. On October 15, 2013, Azzuro sent to SEH a budget proposal for the Project. Doc. 95 ¶ 14; Doc. 96-3 at 1; Doc. 96-4. No employees, agents, or other representatives of Unison were included in the 2013 communications with Azzuro. Doc. 95 ¶ 15.

On February 12, 2015, SEH and the City entered into the "Agreement Between City and Engineer for Professional Services to Conduct Final Design." Id. ¶ 7; see Doc. 96-1. Pursuant to the agreement, SEH was to do the following, among other tasks:

> 1.2.1 Complete plans, supplemental specifications, and special provisions certified by a licensed professional engineer.
>
> . . .
>
> 1.2.21 Consult with and advise the City as to the acceptability of subcontractors and other persons and organizations proposed by the prime contractor(s) (hereinafter called "Contractor(s)") for those portions of work as to which such acceptability is required by the bidding documents.
>
> 1.2.22 Consult with and advise the city as to the acceptability of substitute materials and equipment proposed by Contractor(s) when substitutions prior to the award of contracts is allowed by the bidding documents.

3

1.2.23 Assist the City in evaluating bids or proposals and in assembling and awarding contracts.

. . .

4.1.1 The Engineer shall not sublet or assign any part of the work under this Agreement without written authority from the City.

Doc. 95 ¶ 8; Doc. 96-1 at 1–3.

By the Spring of 2015, SEH was entertaining offer packages from Azzuro on at least one other SEH project in St. Paul, Minnesota. Doc. 95 ¶ 16.

On May 28, 2015, Dustin Maas of SEH contacted Koers of Azzuro regarding the Project. Id. ¶¶ 13, 17. No Unison employees or members were involved in this correspondence between SEH and Azzuro. Id. ¶ 18. Referencing the October 2013 discussions between SEH and Azzuro, Maas reinitiated discussions about a biotrickling filter system. Id. ¶ 19. Maas indicated to Koers that he had participated in the 2013 discussions. Id. ¶ 20.

That same day, Maas forwarded the October 2013 Azzuro proposal and Azzuro's website to Adam Klaas of Unison Solutions, Inc. Id. ¶ 21. Unison Solutions, Inc. is a manufacturer of customized biogas conditioning and upgrading systems, with its principal place of business in Dubuque, Iowa. Id. ¶ 5. Unison entered into a contract with the City in connection with the Project to provide its biogas conditioning and upgrading equipment as part of the Project. Id. ¶ 9. No contract was ever entered between Unison and SEH. Id. ¶ 10.

On June 2, 2015, Maas of SEH organized and chaired a meeting to discuss the October 2013 proposal Azzuro submitted to SEH. Id. ¶ 22. Klaas participated in the meeting on behalf of Unison. Id. ¶ 23. While SEH initiated contact with and led efforts communicating with Azzuro, Unison was pursuing contacts and communication with Paques/THIOPAQ® and Varec Biogas technologies. Id. ¶ 24. On June 19, 2025, Azzuro sent an offer and drawing of the proposed system to SEH only. Id. ¶ 26. On June 22, 2025, Azzuro sent an "Offer Package for a

4

Digester Gas Conditioning Facility" to SEH. Id. ¶ 27. The offer was addressed exclusively to SEH. Id. ¶ 28.

On July 15, 2015, SEH submitted its "Technical Memorandum – Gas Conditioning Equipment Evaluation and Recommendation" (Memorandum) to the City. Id. ¶ 29. The Memorandum included proposals for three separate technologies: Paques/THIOPAQ®, Varec Biogas, and Azzuro. Id. ¶ 30. The Paques/THIOPAQ® and Varec Biogas proposals were addressed directly to Unison while the Azzuro proposal was addressed directly to SEH. Id. ¶ 31. At the Pre-Design review meeting held on July 15, 2015, Unison presented information about Paques/THIOPAQ® and Varec Biogas technologies while SEH presented information about Azzuro. Id. ¶ 32 (citing Doc. 96-13). The SEH Memorandum represented that "Azzuro currently does not have a US installation on a biogas system. As a result, an installation was not contacted to discuss the operation and performance of the system. Azzuro has two installations worldwide for biogas conditioning systems." Id. ¶ 33 (emphasis removed).

Between June 2015 and September 2015, the City, Unison, SEH, and Kennedy Jenks had numerous discussions and meetings about the options for the hydrogen sulfide treatment portion of the Project. Doc. 107 ¶ 22. The City had multiple representatives in every call and meeting considering the information provided and the options for the Project. Id. ¶ 23. Azzuro presented numerous project references and other information directly to the City, Unison, and SEH. Id. ¶ 24.

On July 29, 2015, Unison received an email from Jon Koch with the City of Muscatine, Iowa, providing an unfavorable review of Azzuro's technology and service. Doc. 95 ¶ 36. Koch noted that while the pH of water used in the system drops to anticipated low levels during the summer, each winter, the pH levels increased above anticipated levels, indicating a "die off"

of the biological media and resulting poor performance of the system. Id. ¶ 37. Koch also stated that "for all the problems we had starting this up and getting it going I would have thought they would stay in contact with us to see how it was running and they have not." Id. ¶ 38 (emphasis removed). That same day, Unison forwarded the unfavorable review to SEH. Id. ¶ 39. SEH never provided or discussed the City of Muscatine's unfavorable review with the City. Id. ¶ 40.

Around this time, SEH, Unison, and the City partook in a call "to determine or confirm with Sioux Falls staff (Mark Perry and Ryan Johnson) consensus to move forward with a hydrogen treatment system based on the Azzuro system." Doc. 104-10 at 1; Doc. 104-13 at 1; Doc. 107 ¶ 29. A later email sent by SEH stated, "the consensus is to move forward with the Azzuro system for H2S treatment." Doc. 104-13 at 1.

On August 3, 2015, SEH exchanged emails internally regarding a positive reference about Azzuro technology from Michael Rasmussen with Viskase. Doc. 95 ¶ 42. On August 6, 2015, Azzuro reached out to Alibeckoff, with Sponcel, requesting that Alibeckoff talk with SEH about the Azzuro technology. Id. ¶ 43. Alibeckoff previously worked with Azzuro technology at the 3M Elyria facility in Ohio. Id. ¶ 44. Alibeckoff asked Azzuro if it had disclosed to SEH that Alibeckoff used to work and consult for Azzurro. Id. ¶ 45. Following correspondence with Rasmussen and Azzuro, SEH was referred to Alibeckoff, ostensibly because the 3M Elyria facility was closest in nature to the Project. Id. ¶ 46. There is no evidence that Azzuro disclosed to SEH in August of 2015 or thereafter that Alibeckoff had formerly worked for Azzuro. Id. ¶ 47.

On September 2, 2015, SEH, Unison, and the City had a conference call with Alibeckoff to discuss Azzuro technology at the 3M Elyria Facility. Id. ¶ 50; Doc. 96-8 at 11. Nothing in

6

SEH and Kennedy Jenks' "Record of Conversation" indicates that it was disclosed to Unison or the City that Alibeckoff had been working for Azzuro at the time of initial discussion between Azzuro and SEH in October 2013. Doc. 95 ¶ 51; Doc. 96-8 at 11–13. Alibeckoff stated that he had "been pleased overall with the Azzuro system equipment, operation, and performance." Doc. 95 ¶ 52 (quoting Doc. 96-8 at 12). The parties had a lengthy call with Alibeckoff where they had the opportunity to ask questions about the Azzuro installation. Doc. 107 ¶ 28.

On September 3, 2015, Maas of SEH corresponded directly with Koers of Azzuro, discussing gas testing, sizing the system, and requesting that Azzuro "let us know if we should revise the average design condition." Doc. 95 ¶ 54 (quoting Doc. 96-22). Unison was not included on the email. Id. ¶ 55.

Unison's equipment could work with different systems, whether it was Azzuro, Thiopaq, or BioGas, but Unison would have to take into consideration pressure drop and temperature of the other systems. Doc. 107 ¶ 38. In September 2015, it was decided that Azzuro would be the vendor whose proposal would be used for the basis of the contract and specifications for the Project. Id. ¶ 31.

On September 16, 2015, and again on September 23, 2015, Azzuro provided updated offer packages for the Project that were addressed and emailed solely to SEH. Doc. 95 ¶¶ 56–57, 59–60; see Docs. 96-23, 96-24. Another Azzuro offer package was similarly addressed and sent to SEH by email on December 22, 2015. Doc. 95 ¶ 61; see Doc. 96-25.

Unison reviewed draft plans and specifications prepared by SEH from Unison-written sample specifications for the Project prior to the bid letting. Doc. 107 ¶¶ 32–33. Azzuro was also provided with the draft plans and specifications. Id. ¶ 34. Unison presented SEH with drawings for the systems to be used by SEH in preparing the bid documents. Id. ¶ 35. SEH

7

sought input from Unison and Azzuro with respect to specifications to be used for the Project that were reviewed and commented on prior to the formal City contract being issued. Id. ¶ 36. The draft specifications for the Project were presented to SEH by Unison and Azzuro for SEH's use in generating the bid design and specifications for the Project. Id. ¶ 37.

On March 14, 2016, SEH provided Specification Section 43 32 59 – Digester Gas Conditioning Equipment to the City, which on one page, stated:

> 2.      The Gas Conditioning System shall include the following Equipment/Sub-systems:
>   a.      Hydrogen Sulfide Removal System (AZZURO)

Doc. 95 ¶ 62; Doc. 96-26 at 2. Another page of the specification stated:

> **2.04    HYDROGEN SULFIDE REMOVAL SYSTEM**
>
> A.      Acceptable Manufacturer
>   1.      Azzuro
>           11574 E. Running Deer Trail
>           Scottsdale AZ 85262
>           Tel: 602.903.3918
>   2.      Approved Equal

Doc. 120 ¶ 62; Doc. 96-26 at 8.

On April 5, 2016, Azzuro submitted to Unison its bid package for its system for the Project. Doc. 107 ¶ 40. On April 6, 2016, Azzuro submitted an updated Bid Package for Specification 16-0077 Section 43 32 59 ("Bid Package"), addressed to Unison. Id.; Doc. 95 ¶ 63. On April 7, 2016, Unison submitted its proposal to the City, attaching and incorporating Azzuro's bid package. Doc. 107 ¶ 41. Unison's Bid Request included a warranty for Unison's equipment. Doc. 95 ¶ 67; see Doc. 96-28 at 32. Unison signed Addendum No. 2 to its Bid Request, which included this subsection:

> 4.      Failure of the Gas Conditioning System to meet the performance requirements listed in Paragraphs 2.03A.4 and 2.03A.5, given influent digester composition and characteristics listed in Paragraphs 2.03A.1,

2.03A.2, and 2.03A.3 shall be cause for replacement or repair of the Gas Conditioning System at the Manufacturer's expense.

Doc. 120 ¶ 67; Doc. 71-12 at 38. This performance guarantee was not included in the draft specifications provided by Unison and Azzuro. Doc. 107 ¶ 46. The performance guarantee was added by SEH to protect the City in the event the Azzuro (or other) equipment could not achieve the contract performance requirements. Id. ¶ 47.

On April 11, 2016, SEH wrote to the City to "provide background information related to the equipment procurement to assist and support the approval and award of the bid received from Unison Solutions on April 7, 2016." Doc. 95 ¶ 68. On April 14, 2016, the City approved Unison's bid. Id. ¶ 69. The bid was publicly issued by the City and Azzuro voluntarily submitted its bid to Unison for use in Unison's submission to the City. Doc. 107 ¶ 39. The City entered into a contract with Unison for the supply of the equipment for the project. Id. ¶ 10. Unison, in turn, contracted with Azzuro for the biological hydrogen sulfide removal system. Id. ¶ 11. The contract documents contained requirements for the performance of the systems, including Azzuro's portion of the system. Id. ¶ 43.

On July 22, 2016, SEH submitted its proposal to the City for Construction Administration Services. Doc. 95 ¶ 70. The overall gas treatment system involved six different components with over 25 different equipment components. Doc. 107 ¶ 12. Azzuro's equipment was delivered directly to the City. Id. ¶ 49. The Unison and Azzuro systems were installed by separate contractors retained by the City pursuant to a different construction contract. Id. ¶ 50. AB Contracting was the general contractor for installing the Azzuro system. Id. ¶ 51. The Project schedule provided for a final completion date of April 30, 2017. Doc. 95 ¶ 71. In May 2017, the system initially started up. Doc. 107 ¶ 52. On June 2, 2017, HR Green, which provided construction administration and oversight, and SEH recommended that the City accept

9

substantial completion of the Project. Doc. 95 ¶ 72. The system had been started up and staff training completed. Id. ¶ 73.

Azzuro had originally advised the City that it would take two weeks to start up the Azzuro System and achieve the < 100 ppmv performance requirement. Id. ¶ 74; Doc. 96-12 at 7; Doc. 120 ¶ 74; Doc. 104-24. However, over two months later, the Azzuro System had not fulfilled the performance requirement. Doc. 95 ¶ 75. On August 29, 2017, Unison received a Notice and Request for Immediate Update and Completion Plan from the City. Id. ¶ 76. The letter provided notice that, to date, the Azzuro System had not provided beneficial use, nor had it met performance requirements. Id. ¶ 77. As such, the City was precluded from using its GE Jenbacher engine generator to produce energy and had expended considerable consultant and staff time to address nonperformance issues. Id. ¶ 78. The City provided September 27, 2017 as a deadline for compliance. Id. ¶ 79. The letters regarding the deficiencies in the Azzuro system were sent from the City to Unison, who passed them along to Azzuro, and from Azzuro to Unison who passed them along to the City. Doc. 107 ¶ 56. Unison refused to send at least one letter from Azzuro to the City, requiring Azzuro to revise it before Unison would send it to the City. Id. ¶ 57.

Despite efforts by Unison to ensure Azzuro addressed nonperformance issues, the Azzuro System never met performance requirements. Doc. 95 ¶ 80. On November 29, 2017, Unison received a letter from the City advising that the Azzuro system had greatly underperformed the hydrogen sulfide discharge requirements stated in the project specifications and "requesting Unison replace the non-performing Azzuro System and provide a new System that will meet all specified performance requirements." Doc. 96-36; Doc. 95 ¶ 81.

In January 2022, prior to the City filing the above-captioned lawsuit, the City and Unison entered a tentative agreement for the City to release its claims against Unison. Doc. 95 ¶ 82. Due to the settlement agreement requiring the approval of the City of Sioux Falls City Council, the release was not formally executed by the City until May 26, 2022. Id. ¶ 83.

## II.    Discussion

### A.    Summary Judgment Standard

"Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Allan v. Minn. Dep't of Hum. Servs., 127 F.4th 717, 720 (8th Cir. 2025) (quoting Avenoso v. Reliance Standard Life Ins. Co., 19 F.4th 1020, 1024 (8th Cir. 2021)). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation modified). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp., 477 U.S. at 324). At the summary judgment stage, the Court must view evidence "in the light most favorable" to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). But where "no rational trier of fact could find for the nonmoving party . . . summary judgment is appropriate." McCormack v.

Citibank, N.A., 100 F.3d 532, 537 (8th Cir. 1996) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "When there are cross motions for summary judgment, each party's motion must be evaluated independently in accordance with the standard weight of evidence accorded to the nonmoving party to determine if there is any genuine issue of material fact." Emps. Mut. Cas. Co. v. Brant Lake Sanitary Dist., 446 F. Supp. 3d 557, 562 (D.S.D. 2020); see Fed. Ins. Co. v. Great Am. Ins. Co., 893 F.3d 1098, 1102 (8th Cir. 2018).

## B.    Indemnification / Contribution

In the City's first-party Complaint, it brought against SEH claims of breach of contract, negligence, and negligent misrepresentation for its losses related to the Project. See generally Doc. 1. In SEH's Count I of its Third-Party Complaint, SEH seeks from Unison indemnification, or in the alternative, contribution, for any amount it might have to pay on the City's claims. Doc. 8 ¶¶ 11–14.

### 1.    Indemnification

"Indemnity is a remedial measure which is invoked to secure the right of the first party to be reimbursed by the second party for the discharge of a liability which, as between the parties, should equitably be discharged by the second party." Ebert v. Fort Pierre Moose Lodge # 1813, 312 N.W.2d 119, 122 (S.D. 1981) (citation and footnote omitted). It "is a separate cause of action, independent of the underlying liability." Weiszhaar Farms, Inc. v. Tobin, 522 N.W.2d 484, 492 (S.D. 1994) (citation omitted). "In South Dakota, indemnity is an 'all-or-nothing' proposition." Sheehan v. Morris Irrigation, Inc., 460 N.W.2d 413, 417 (S.D. 1990) (quoting Ebert, 312 N.W.2d at 123). And so, "the party seeking indemnification must show an absence of proportionate fault to shift the entire liability." Weiszhaar Farms, 522 N.W.2d at 492 (citing Sheehan, 460 N.W.2d at 417). "Indemnity is proper, indeed mandated, where only one

12

party has a liability or duty, which was discharged by another." Id. (citations omitted).  South Dakota allows an indemnity claim to be brought before the party seeking indemnity "becomes obligated to pay." Mark, Inc. v. Maguire Ins. Agency, Inc., 518 N.W.2d 227, 230 (S.D. 1994).

Unison argues that "SEH is not entitled to indemnification from Unison, because at minimum, it cannot prove that SEH had no proportionate fault." Doc. 94 at 12.  SEH responds that:

> Unison is 100 percent liable for any negligence of Azzuro and for any breach of contract by Azzuro.  If Azzuro was negligent, Unison is vicariously liable for Azzuro. If Azzuro breached the terms of the Contract Documents, Unison breached the terms of the Contract Documents and Unison is liable for the breach. Azzuro's liability is Unison's liability in the case. . . . Because any liability on the part of SEH is dependent upon liability on the part of Azzuro (and in turn Unison), SEH is entitled to full indemnification from Unison for any amounts owed to the City.

Doc. 119 at 3.

But Unison, who was the City's contractor, built a system based on plans and specifications designed by SEH.  Doc. 95 ¶ 62. And it was only SEH's contractual duty to conduct that final design.  Id. ¶ 7.  It remains for the jury to decide whether an innate defectiveness of the Azzuro system caused the Project's failure.  But if it did, "a construction contractor who has followed plans or specifications furnished by the contractee, his architect, or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results solely from the defective or insufficient plans or specifications." Bunkers v. Jacobson, 653 N.W.2d 732, 741 (S.D. 2002) (citation modified).

Because Unison cannot be held liable for simply adhering to defective specifications furnished by SEH, any possible liability of Unison would require negligence or a negligent misrepresentation independently attributable to Unison, "or any express warranty by [Unison] as to [the plans or specifications] being sufficient or free from defects." Id. (citation omitted).

13

SEH argues Unison did so-warrant the Azzuro system. SEH argues "Unison signed acknowledging the performance guarantee in Addendum 2 applying to both Unison and Azzuro." Doc. 129 at 3. That addendum states, "[f]ailure of the Gas Conditioning System to meet the performance requirements . . . shall be cause for replacement or repair of the Gas Conditioning System at the Manufacturer's expense." Doc. 71-12 at 38. As a matter of contract, the "Manufacturer" of the hydrogen sulfide removal system was Azzuro—not Unison. Doc. 71-8 at 9. And so, Unison did not, through Addendum 2, warrant that system to be defect-free.

SEH also argues Unison warranted the system through its own "Warranty Statement." Doc. 129 at 3–4. That statement reads, "Unison provides this warranty for its equipment." Doc. 96-28 at 32. The Azzuro system was not Unison's equipment. See Doc. 71-8 at 9 ("Hydrogen Sulfide Removal System shall be a product of: Azzuro").

With no guarantee, SEH's indemnification claim depends on both a finding of Unison's negligence and negligent misrepresentation as related to the City's claims against SEH and a complete absence of any liability on the part of SEH. Bunkers, 653 N.W.2d at 741; Weiszhaar Farms, 522 N.W.2d at 492. Even viewing the facts in the light most favorable to SEH, a juror could rationally find that SEH earned liability in its own right by designing and recommending a system that required the use of a defective Azzuro system (or approved equal) and recommending the implementation of the Azzuro system, specifically. As an example, SEH was aware of Jon Koch's negative review of a different Azzuro system but did not alert the City to that review. Doc. 95 ¶ 40. The fact that SEH may have an explanation for not sharing that negative review, see Doc. 120 ¶ 40, does not foreclose the possibility of a juror finding SEH fell below its standard of care by not making the City aware of it, or that SEH actively concealed it

because of its closer working relationship with Azzuro. See Doc. 95 ¶ 24. Unison's motion for summary judgment on SEH's indemnification claim is granted, and SEH's motion for summary judgment on its indemnification claim is denied.

### 2.   Contribution

In South Dakota, contribution is a creature of statute. "The right of contribution exists among joint tort-feasors." SDCL § 15-8-12. Joint tort-feasors "means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." § 15-8-11. "When there is such a disproportion of fault among joint tort-feasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares." § 15-8-15. "The recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasors." § 15-8-16. "A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." § 15-8-17.

Negligence and negligent misrepresentation are the torts the City brought against SEH. Doc. 1 at 13, 15. "Generally, negligence is a question of fact for determination by a jury." Jones v. Kartar Plaza Ltd., 488 N.W.2d 428, 429 (S.D. 1992) (per curiam) (citation omitted). Negligent misrepresentation also comes with a host of factual questions that must be resolved by a jury. Fisher v. Kahler, 641 N.W.2d 122, 126–27 (S.D. 2002). The City's tort claims relate to SEH's recommendation of the Azzuro system and its allegedly negligent design for the

15

Project, which incorporated the Azzuro system. Doc. 1 ¶¶ 80–101. Granting summary judgment to Unison on contribution would only be appropriate if no rational trier of fact could find Unison partially liable under those theories. The Court is not persuaded to make that leap.

Unison was part of the group that allegedly came to a "consensus" that Azzuro would be the hydrogen sulfide removal manufacturer used for the Project. Doc. 107 ¶ 29; see Doc. 104-10 at 1; Doc. 104-13 at 1. While Unison blames SEH for not conveying Jon Koch's negative review to the City, Unison was also aware of that review but did not communicate it to the City. And despite being aware of that review, Unison chose to join the "consensus," incorporate the Azzuro system into its bid, and accept the City's business on the Project. Viewing these facts in the light most favorably to SEH, it is possible for a jury to assign joint liability to Unison for negligence or negligent misrepresentation.

A question of contribution as to breach of contract may also proceed to the factfinder. See Doc. 106 at 8–11. Where two parties with separate contracts "each breach[ ] [their] contract independently," and "[t]he damage to the city for either breach [is] the same," the parties "have a right to seek proportionate contribution." City of Bridgewater v. Morris, Inc., 594 N.W.2d 712, 717 (S.D. 1999) (citing SDCL § 20-1-6). Both SEH and Unison contracted independently with the City. Doc. 95 ¶ 7; Doc. 107 ¶¶ 2, 10. A breach of contract action is pending against SEH, and although Unison settled with the City, these facts could lead to a finding that Unison also breached its contract to provide compliant equipment. Doc. 95 ¶¶ 76–82; Doc. 96-36. SEH's contracts with the City involved professional engineering services, advice, and Project design. Doc. 95 ¶ 7; Doc. 107 ¶ 2. Unison's involved the provision of equipment. Doc. 107 ¶ 10. But despite those differences, a jury could find the damage to the City was the same for either ostensible breach. City of Bridgewater, 594 N.W.2d at 714, 716–17 (breaches of

16

engineering and construction contracts for water distribution project resulted in same damage). SEH is entitled to argue at trial for contribution from Unison for any damages assessed for breach of contract.

Unison seeks to avoid contribution by invoking against SEH the doctrine of unclean hands. Doc. 94 at 15. That doctrine requires "a party seeking equity [to] act fairly and in good faith." Halls v. White, 715 N.W.2d 577, 585 (S.D. 2006) (citation modified). But SEH is not seeking equity. Contribution is a statutory right, so the equitable doctrine is inapplicable. Hershey v. Hershey, 467 N.W.2d 484, 487 n.1 (S.D. 1991).

Unison also seeks to equitably estop SEH from seeking contribution. Doc. 94 at 16. "[A] party may be estopped by his acts or conduct to claim what would otherwise be his legal rights." L.R. Foy Constr. Co. v. S.D. State Cement Plant Comm'n, 399 N.W.2d 340, 343 (S.D. 1987).

> In order to constitute an equitable estoppel . . . representations or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; the representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury.

Dakota Truck Underwriters v. S.D. Subsequent Inj. Fund, 689 N.W.2d 196, 204 (S.D. 2004) (citation omitted) (ellipsis in original).

> Unison argues:

> Here, SEH not only represented to Unison and the City that Azzuro was able to deliver the proposed system, but SEH also actively sought to counter the poor Azzuro review that Unison brought forward and actively either misled the City about or covered up its lack of effort to confirm the performance *or even the very existence of* two claimed international installations of the Azzuro system. SEH also failed to disclose to Unison and the City that the glowing recommendation it brought before the City on September 2, 2015 was from none other than a former Azzuro employee that *SEH had communicated with in 2013* in the nascent stages of the project.

17

Doc. 94 at 16.

SEH counters that "there is no evidence in the record to indicate any concealment or misrepresentations by SEH." Doc. 119 at 11. As it pertains to Unison, the Court agrees. Unison and SEH were jointly aware of the negative review received by Jon Koch from Muscatine, Iowa. So, Unison did not act differently because of any alleged concealment of that review by SEH. Unison argues that it relied on Dominique Alibeckoff's recommendation of the Azzuro system, and that "[t]here is no evidence that [it was] ever aware" that Alibeckoff formerly worked for Azzuro. Doc. 94 at 17. Unison argues that SEH intentionally concealed its own awareness. Id. at 16. But the undisputed facts only show that Dominique Alibeckoff was on early emails (from 2013) between Azzuro and SEH. Doc. 95 ¶¶ 12, 48. That fact, viewed in the light most favorable to SEH, does not give rise to an inference that SEH remembered Alibeckoff's name two years later yet concealed its knowledge so that Unison would act on Alibeckoff's favorable recommendation. Unison's equitable estoppel argument does not carry the day.

Nor does SEH's motion for summary judgment on contribution. The Court is unwilling to accept SEH's theory that, as a matter certain, SEH "is entitled to contribution from Unison for any amounts that are owed to the City, and the fault must be apportioned." Doc. 106 at 11. SEH is the only entity on these facts that was hired by the City to advise the City, provide professional engineering services on the Project, and conduct the final design. It is possible that a jury, finding SEH liable, would allocate no liability to other actors who only facilitated SEH's vision. It is also possible a jury may find no liability for SEH at all. In the Court's judgment, a jury should decide the important issues of liability and contribution.

Both Unison and SEH's motions for summary judgment as to contribution are denied. The jury will have an opportunity to consider contribution at trial. Unison will not be responsible, however, for any additional payment to the City beyond what it has already paid for its release, as explained in the indemnity clause in the release. Doc. 14-1 ¶ 7. "A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for its release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." SDCL § 15-8-17.

### C.    Misrepresentation, Negligence, Breach of Contract, Warranty

SEH brought a separate count against Unison alleging three separate claims: misrepresentation, negligence, and breach of contract/warranty. Doc. 8 at 3. SEH claims it "relied upon the representations, warranties and guarantees made by Unison and Azzuro in SEH's performance of its services on the Project." Id. ¶ 16. It argues "Unison and Azzuro misrepresented the capabilities of their design, products, systems and other work, which misrepresentations have caused the Plaintiff to assert the claims in this action to recover the Plaintiff's alleged damages. Id. ¶ 17. It argues, "Unison and/or its subcontractor Azzuro are the parties actually responsible for any damages incurred by the Plaintiff, rather than SEH." Id. ¶ 18.

Unison argues this count is merely a rehashing of SEH's indemnity/contribution count and should therefore be dismissed. Doc. 94 at 22. The Court agrees. SEH does not plead any additional damages it suffered as a result of Unison's alleged independent torts or breaches against SEH. It merely repleads the theory that the Plaintiffs' damages are the liability of

Unison and Azzuro—not SEH.  SEH also does not explain in any detail in its briefing to this Court what its "own damages" are for these independent tort claims, or provide any analysis as to how any independent tort claims survive summary judgment.  Unison's motion for summary judgment as to Count II is granted.

Because the Court granted Unison's motion for summary judgment on the claim of indemnification, the Court need not consider SEH's argument, brought here, that indemnification "include[s] indemnification for all costs, damages and losses incurred by SEH." Doc. 119 at 14.

## III.   Order

For the above reasons, and the record as it now exists before the Court, it is hereby

ORDERED that Unison Solutions, Inc's Motion for Summary Judgment, Doc. 93, is granted in part and denied in part in accordance with this opinion.  The indemnification component of Count I of SEH's Third-Party Complaint is dismissed with prejudice.  Count II is also dismissed with prejudice.  The contribution component of Count I survives.  The Court defers consideration of Unison's request to proceed with an empty chair defense.  The Court will address that request in a separate order to follow.  It is further

ORDERED that Short Elliot Hendrickson, Inc.'s Motion for Summary Judgment as to SEH's Claims Against Unison Solutions, Doc. 102, is denied.

DATED this 31st day of March, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

20